IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| TERRY CARTRETTE TINDALL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION |
| | : | NO. _____ |
| H&S HOMES, LLC, HORTON | : | |
| HOMES, INC., HORTON INDUSTRIES, | : | |
| INC., N. DUDLEY HORTON, JR., | : | |
| STEVE M. SINCLAIR, BEST VALUE | : | |
| HOUSING, INC., HORTON-AMERICAN | : | |
| PROPERTIES, LLC, TRIANGLE HOMES, | : | |
| LLC, REGAL HOMES, LLC, NEW | : | |
| GENERATION HOMES, LLC, | : | |
| AMERICAN REAL ESTATE | : | |
| INVESTMENT COMPANY, LTD., L.P., | : | |
| THE MAUDE H. HICKS FAMILY TRUST, | : | |
| THE N. D. HORTON REVOCABLE | : | |
| TRUST, and THE ROBERT DUDLEY | : | |
| HORTON TRUST, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff shows to the Court the following:

## PARTIES

1.

Terry Cartrette Tindall, Plaintiff, is a citizen and resident of South Carolina.

2.

Horton Industries, Inc., herein named Defendant, is a corporation having its principal place of business at 101 Industrial Boulevard, Eatonton, Putnam County, Georgia, within the Macon Division of the Middle District of Georgia. It is the owner of several corporations

having connection to the manufactured home industry including Defendants Horton Homes and Triangle Homes.

3.

Horton Homes, Inc., herein named Defendant, is a corporation having its principal place of business at the same address as that of Horton Industries. It is a manufacturer of manufactured homes. It is wholly owned and controlled by Horton Industries. It is the sole member of H&S Homes, LLC. It is a thriving business having considerable assets including assets fraudulently transferred to it by H&S.

4.

H&S Homes, LLC, herein named Defendant, is a limited liability company also having its principal place of business at the same address as Horton Industries. It was until sometime in 2007 solely involved in the sale of homes manufactured by Horton Homes, Inc. or its affiliated companies. It is wholly owned and controlled by Horton Homes, Inc. moneywise and otherwise. It is now inactive and insolvent.

5.

N. Dudley Horton, Jr., herein named Defendant, is either Chairman of the Board, President or Chief Operating Officer of each of the above companies. He owns and/or controls the vast majority of the stock in Horton Industries, Inc., Horton Homes, Inc., H&S Homes, LLC, Best Value Housing, and Horton-American Properties, LLC. He controls each of the defendant companies and the Trusts hereafter described. He was directly involved in the actions described hereinafter.

6.

Steve M. Sinclair, herein named Defendant, is President of H&S, Vice President of Horton Homes, and Vice President of Horton Industries. He was directly involved in the actions described hereinafter. He is a 1% owner of the stock in Horton Industries.

7.

Best Value Housing, Inc. is a Georgia corporation and a wholly-owned subsidiary of Horton Industries. N. Dudley Horton, Jr. is its CEO.

8.

Horton-American Properties, LLC, is a Georgia limited liability company and is controlled by Horton Homes. N. Dudley Horton, Jr. is its registered agent.

9.

Triangle Homes, LLC, herein named Defendant, is a limited liability company having its principal place of business at 101 Industrial Blvd., Eatonton, Putnam County, Georgia, within the Macon Division of the Middle District of Georgia. It is solely involved in the sale of homes manufactured by Horton Homes or its affiliated companies. On or about February 1, 2007, it took over the functions formerly performed by H&S Homes, LLC, as part of a plan to delay, hinder and defraud the creditors of H&S Homes, LLC, including Plaintiff in particular. It is wholly owned and controlled by Horton Industries, Inc. and its officers including specifically N. Dudley Horton, Jr. It is a participant in the conspiracy referred to in the complaint as well as the fraudulent transfers and preferences. Its corporate veil should be pierced.

10.

Regal Homes, LLC, herein named Defendant, a Georgia limited liability company, is a wholly owned subsidiary of Triangle Homes, LLC. It is the sales arm of Horton Homes in Georgia, a function formerly performed by H&S. It conducts its business in Georgia almost if not entirely in offices formerly owned by H&S. It has received the beneficial use of property formerly owned by H&S for consideration less than adequate. It is a participant in the conspiracy referred to in this complaint as well as the fraudulent transfer and preferences. Its corporate veil should be pierced as it is the alter ego of H&S.

11.

New Generation Homes, LLC, herein named Defendant, a North Carolina limited liability company, is a wholly owned subsidiary of Triangle Homes, LLC. It is the sales arm of Horton Homes in North Carolina, a function formerly performed by H&S. It conducts its business in North Carolina almost if not entirely in offices formerly owned by H&S. It has received the beneficial use of property formerly owned by H&S. It has received the beneficial use of property formerly owned by H&S for consideration less than adequate. It is a participant in the conspiracy referred to in this complaint as well as the fraudulent transfer and preferences. Its corporate veil should be pierced as it is the alter ego of H&S.

12.

American Real Estate Investment Company, herein named defendant, is a member of defendant Horton-American Properties. It has received monies and property rightfully belonging to H&S Homes, LLC. It is controlled in whole or in part by Defendant N. Dudley

Horton, Jr. and by other defendants. It is a participant in the conspiracy referred to in the complaint as well as the fraudulent transfer and the preference.

13.

The Maude H. Hicks Family Trust owns approximately 54% of the stock of defendant Horton Industries, Inc. Defendant Dudley Horton is its Trustee. This trust participated in the conspiracy described herein through the actions of its Trustee Dudley Horton and is hereby named a defendant.

14.

The N. D. Horton Revocable Trust owns approximately 35% of the stock of Horton Industries, Inc. Dudley Horton is its Trustee. This trust participated in the conspiracy described herein through the actions of its Trustee Dudley Horton and is hereby named a defendant.

15.

The Robert Dudley Horton Trust owns approximately 10% of the stock of Horton Industries, Inc. Dudley Horton is its Trustee. This trust participated in the conspiracy described herein through the actions of its Trustee Dudley Horton and is hereby named a defendant.

16.

Each of the defendants reside in the Macon Division.

17.

Defendants Sinclair, H&S and Horton Homes can be served by serving Steve Sinclair. Defendants N. D. Horton, Jr., the Maude H. Hicks Family Trust, the N. D. Horton

Revocable Trust, the Robert Dudley Horton Trust, Horton Industries, Horton-American Properties, American Real Estate Investment Company, Ltd., L.P. and New Generation Homes can be served by serving N. D. Horton, Jr. New Generation and Triangle Homes can be served by serving R. W. Hicks, Jr. Regal Homes can be served by serving H. David Giddens. Best Value Housing, Inc. can be served by serving Carla Everett.

18.

This Court has jurisdiction of this matter under 28 USC §1332(a)(1) because there is complete diversity of citizenship between the Plaintiff and all Defendants and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

19.

Venue is proper in the Macon Division because all Defendants reside here.

**THE JUDGMENT**

20.

Plaintiff purchased a home manufactured by Horton Homes, Inc. and sold by H&S Homes, LLC doing business as Horton Homes of Conway in 1999. During her purchase, agents of the seller defrauded her in various ways which were described by the Court of Appeals of South Carolina in its affirmance of this case.

21.

The methods used to defraud Plaintiff were part of a pattern of fraud used to defraud other customers, many of whom filed suits against H&S during the period 2000 to 2007.

22.

Plaintiff's case was tried to a South Carolina jury and she received a verdict and judgment in the Circuit Court of Horry County. The judgment was affirmed after an appeal by H&S.

23.

Plaintiff was unable to collect any of her judgment in South Carolina because of the actions of Defendants described hereafter which, among other things, transferred its assets to the other Defendants.

24.

Plaintiff's judgment has now been domesticated in Georgia.

## THE FRAUDULENT TRANSFER

25.

At the time of Plaintiff's judgment, H&S was a large company with many employees, with many offices and much property in several southeastern states.

26.

All or substantially all of the business and income of H&S was from the sale of homes manufactured by Horton Homes, Inc.

27.

In 2005, Plaintiff filed an action in Putnam Superior Court to domesticate her South Carolina judgment in Georgia. H&S vigorously opposed this action until on April 10, 2007, the judgment was domesticated.

28.

During the interim and just before said domestication, the Defendants caused H&S to cease doing business in Georgia, South Carolina, North Carolina and Tennessee.

29.

Despite the fact that H&S sold hundreds of Horton Homes in each of the years preceding Plaintiff's judgment, the Defendants have caused H&S to stop doing business altogether and have turned the sales of Horton Homes over to another wholly owned subsidiary which was created for that purpose named Triangle Homes, LLC. Triangle was created in January 1, 2007. Triangle and its subsidiary companies, Beacon, Regal and New Generation performed for Horton Homes virtually the same services that H&S formerly did.

30.

In late 2004 and early 2005, the existence of Plaintiff's judgment, another substantial judgment in favor of Christina McDonald and several other serious lawsuits alleging fraud by H&S caused H&S to begin its plan to protect its assets. In an effort to protect the assets of H&S from Plaintiff's judgment, the conspirators caused suit to be filed against Horton's subsidiary H&S for $22,003,000 in January 2005.

31.

In furtherance of this conspiracy to hinder, delay and defraud its creditors, H&S simply defaulted upon the lawsuit and allowed a default judgment to be rendered against it in the amount of $22,003,000 on February 21, 2005.

32.

If there was any debt at all owed by H&S to Horton, it was because of an unequal relationship between the parties which caused H&S to sell Horton Home's products at a continuous and ongoing loss as the result of the unique bargaining position between the two parties.

33.

Beginning no later than the summer of 2006, Defendants Dudley Horton and Steve Sinclair began to seek advice about a plan to protect the assets of H&S from judgment creditors such as Terry Tindall.

34.

Defendants were presented with a plan to form a new company that would take over the business of H&S including its sales centers, employees and managers and perform the same function as H&S using assets formerly used by H&S.

35.

Within six months of September 1, 2006, H&S ceased operations as a seller of Horton Homes manufactured homes and the Triangle subsidiaries began to perform that function.

36.

Within six months of September 1, 2006, the leases of H&S sales lots were terminated and new leases were negotiated of all or almost all of the sales lots by the Triangle entities.

37.

Within six months of September 1, 2006, Horton Homes repurchased the existing inventory of manufactured homes owned by H&S and then resold the same homes to the Triangle entities.

38.

Within six months of September 1, 2006, H&S laid off all or nearly all of its salespersons and managers at its 20 retail sales centers. Immediately or almost immediately, all or almost all of these salespersons and managers were hired by the Triangle entities.

39.

Within six months of September 1, 2006, the financing arrangements and insurance arrangements of H&S were terminated. Immediately or almost immediately, the Triangle entities entered into the same or similar arrangements with all or nearly all of the same companies.

40.

Whereas H&S has been a wholly owned subsidiary of defendant Horton Homes, Triangle was set up as a wholly owned subsidiary of defendant Horton Industries.

41.

All of these elaborate measures and many more were done for cosmetic reasons to conceal the fact that the Triangle entities were the alter ego of H&S.

42.

Shortly after the creation of Triangle Homes, LLC, on January 1, 2007, the conspirators caused substantially all of the remaining assets of H&S to be sold at auction in

early 2007. The vast majority of this property was purchased by other affiliates of defendants including Best Value and Horton-American at grossly inadequate prices which were a fraction of the book value shown on H&S's books. The inadequacy of the consideration was not less than $2,000,000. This constitutes a fraudulent transfer.

43.

As a further part of this conspiracy to protect the assets of H&S, Horton and H&S, through Mr. Sinclair and Mr. Horton, have caused H&S to fraudulently transfer at least $8,000,000 out of the accounts of H&S and into the accounts of Horton Homes. As a result, H&S is not only insolvent but has virtually no assets.

44.

Each of the Defendants received the benefit of the fraudulent transfers.

45.

Each of the Defendants is liable for their participation in the conspiracy to fraudulently transfer and hide the assets of H&S Homes, LLC.

46.

Said transfers were made with actual intent to hinder, delay or defraud creditors of H&S in general and Plaintiff in particular.

47.

Such transfers have the following badges of fraud:

(a) The transfers were made to Horton Homes, Inc., Best Value and Horton-American, Triangle, Regal and New Generation, all of whom are insiders.

(b) Before the transfers had been made, the debtor had been sued by Plaintiff as well as by other persons with claims against H&S.

(c) The transfers were of substantially all of the assets of H&S.

(d) H&S was either insolvent or became insolvent with the transfers.

(e) The transfers occurred shortly after Plaintiff's South Carolina judgment became final and shortly before her Georgia judgment became final.

(f) Even though H&S transferred the $8,000,000 to Horton, it retained control of the assets as is shown by its act of borrowing from Horton $200,000 on March 21, 2005, $400,000 on August 31, 2005, and $85,000 on January 24, 2007.

48.

Said transfers were made without receiving a reasonably equivalent value in exchange for the transfers and H&S was insolvent or rendered insolvent.

49.

Said transfers were fraudulent under O.C.G.A. §§ 18-2-20, 18-2-21, 18-2-74 and 18-2-75 as well as the laws of South Carolina, North Carolina and other states where the property was located. It is a result both of actual and constructive fraud.

**PIERCING THE CORPORATE VEIL**

50.

H&S is the alter ego of Horton Homes, Inc. which is the alter ego of Horton Industries, Inc. which is the alter ego of N. Dudley Horton, Jr.

51.

Horton Homes, Inc., through N. Dudley Horton, Jr., completely dominates H&S.

52.

The three corporations all have as their principal place of business 101 Industrial Boulevard, Eatonton, Georgia.

53.

All three corporations share the same offices.

54.

All are controlled legally and in fact by N. Dudley Horton, Jr.

55.

Horton Homes created H&S and provided its capital but then caused its capital to dissipate so that at all times relevant, said capital was grossly inadequate.

56.

Horton Homes and Horton Industries allowed H&S to operate in Conway under the name "Horton Homes of Conway."

57.

Horton Homes, Inc. pays the salary of H&S President Steve Sinclair. Horton Industries pays the salary of the President of Triangle Homes, LLC.

58.

Horton Homes, through N. Dudley Horton, Jr., controlled the commissions paid, the interest rate charged and other financial arrangements between H&S and Horton, so that H&S continually owed great sums of money to Horton. At all times relevant herein, H&S

could have been rendered insolvent by the action of Horton Homes calling its notes. None of this was apparent to the public because the income (and losses) of H&S were consolidated with those of Horton Homes.

59.

H&S has a manager and officers but those persons do not act independently in the interests of H&S but instead do the bidding of Horton Homes, Inc., Horton Industries and N. Dudley Horton, Jr. and the trusts herein named.

60.

Because of its subservience to Horton Homes, Horton Industries and N. Dudley Horton, Jr., H&S acquiesced in the conspiracy to dismantle its business and transfer virtually all of its property to other defendants. This constitutes commingling.

61.

In December 2006, Horton Industries directed Horton Homes and its other affiliated companies, including H&S, to transfer all of their real property to Horton Industries for no consideration. Horton Homes agreed to do so pursuant to a "Consent Action."

62.

The Defendants have abused the corporate entity of H&S as a device to defeat justice, perpetuate fraud and to evade tort responsibility. H&S was a mere instrumentality for the transaction of the affairs of Horton Industries, Horton Homes and N. Dudley Horton, Jr. and is virtually the same entity as Beacon, Regal and Triangle. To adhere to the doctrine of corporate entity would promote injustice and protect fraud.

## THE PREFERENCE

63.

Beginning at a date no later than January 2005, the conspirators began a course of conduct, scheme and device for the purpose of benefitting and preferring Horton Homes, Horton Industries, Best Value, Horton-American, Triangle and the other defendants to the detriment and disadvantage of Plaintiff and other creditors of H&S.

64.

This was accomplished by the payment of vast sums of money exceeding $8 million to Horton Homes as well as the transfer of property undervalued by at least $2 million to subsidiaries of Horton and Horton Industries including but not limited to Best Value and Horton-American, the Triangle companies and other defendants.

65.

At all times when said preferences were made, H&S as well as its members and managers, including N. Dudley Horton, Jr. and Horton Homes, LLC, were by operation of law the fiduciaries and trustees of the property of H&S for the benefit of its creditors including Plaintiff.

66.

At the time of said preference, H&S was insolvent in the sense that after the transfer its assets were not adequate to pay its existing debts including Plaintiff's judgment.

67.

At the time of the transfer of assets, Plaintiff was a creditor of H&S within the meaning of O.C.G.A. §18-2-1.

68.

At the time of the transfer of assets, H&S had ceased doing business, terminated its sales force and had no ability to earn any additional income.

69.

Despite the fact that H&S is not insolvent, it has not filed for bankruptcy.

70.

Horton Homes and the other conspirators should be required to disgorge this preference and repay to H&S a sum sufficient to pay Plaintiff's judgment including the judgment in this case.

## PUNITIVE DAMAGES

71.

Because of the wilful, intentional and fraudulent misconduct of the Defendants and the aggravating circumstances involved in the fraudulent transfer of assets, Plaintiff is entitled to an award of punitive damages to punish and deter Defendants from continuing or repeating such acts.

72.

Defendants acted with specific intent to harm Plaintiff by preventing her from recovering her judgment. Defendants are therefore liable for an award of punitive damages of not less than $20,000,000.

**ATTORNEY'S FEES**

73.

Defendants have acted in bad faith, have been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense. Defendants should be required to pay Plaintiff's expense of litigation under O.C.G.A. §13-6-11.

74.

Plaintiff incorporates by reference each paragraph of this Complaint into each of the sections herein.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that she have judgment:

(a)     that the veil of H&S be pierced so that Horton Homes, N. Dudley Horton, Jr., Horton Industries, Triangle, Regal, New Generation and other defendants are liable to Plaintiff to the same extent as H&S;

(b)     that the transfer of monies or property from H&S to other defendants be declared to be fraudulent transfer and set aside;

(c)     that the transfer of monies or property from H&S to other defendants be declared to be an illegal preference and set aside;

(d)     that each of defendants is liable to Plaintiff in the amount of her judgment plus interest thereon;

(e)     that each of the defendants is liable for punitive damages in an amount not less than $20,000,000;

(f)     that the defendants are liable to Plaintiff for her expenses of litigation caused by their conduct in violation of O.C.G.A. §13-6-11;

(g)     that the transfer of all the funds paid by H&S to Horton Homes, Inc. and the transfer of all property to Best Value, Horton-American, the Triangle companies and other defendants be avoided and the funds retransferred to H&S pursuant to O.C.G.A. §18-2-77(a)(1);

(h)     that an attachment of this Court issue against the funds so paid and the property so transferred to prevent their dissipation pursuant to O.C.G.A. §18-2-77(a)(2);

(I)     that such funds be required to be paid to the Clerk of United States District Court to prevent their dissipation pursuant to O.C.G.A. §18-2-77(a)(2);

(j)     that an injunction issue against further dissipation of the funds and property of H&S pursuant to O.C.G.A. §18-2-77(a)(3)(A);

(k)     that in the alternative, a receiver be appointed to take charge of the property of Horton Homes, Inc. pursuant to O.C.G.A. §18-2-77(a)(3)(13);

(l)     that Plaintiff be allowed to immediately levy execution upon the funds transferred or its proceeds pursuant to O.C.G.A. §18-277(a)(3)(b);

(m)     for any other relief including equitable that the circumstances may required; and

(n)     all costs of this action.

## JURY REQUEST

Plaintiff prays that this case be decided by a jury.

                                          Respectfully submitted,

                                          ***/s/  F. Kennedy Hall***

                                          F. Kennedy Hall
                                          Georgia State Bar No. 318400

P. O. Box 5088
Macon, Georgia 31208-5088

                                          ***/s/  Richard M. Lovelace, Jr.***

LAW OFFICES OF                     Richard M. Lovelace, Jr.
    RICHARD M. LOVELACE
P. O. Box 1704
Conway, South Carolina  29526

                                          ***/s/   Peter L. Hearn***

HEARN, BRITTAIN & MARTIN, P.A.     Peter L. Hearn
1206 Third Avenue
Conway, South Carolina  29526

                                          Attorneys for Plaintiff
                                          Terry Cartrette Tindall