THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TERRY CARTRETTE TINDALL,      :
                              :
    Plaintiff,                :
                              :         Civil Action
v.                            :         No. 5:10-cv-044(CAR)
                              :
H & S HOMES, LLC, et al.,     :
                              :
    Defendants.               :
_____

### *ORDER REGARDING INADVERTENT DISCLOSURE OF PRIVILEGED DOCUMENTS*

Currently before the Court is Plaintiff's "Motion for a Determination of Whether Document Disclosure was Inadvertent." [Doc. 81]. The present motion arises out of Defendant Steve Sinclair's disclosure of approximately eighteen legal invoices to Plaintiff's counsel prior to his deposition as designee for Defendant H&S Homes. Before the deposition, Defendant Sinclair produced three banker boxes containing 5,000 pages of documents at Plaintiff's request. Within those 5,000 pages of checks and supporting invoices were eighteen legal invoices. After the deposition, Defense counsel objected to Plaintiff's use of the documents and requested that the invoices be returned. Plaintiff filed the present motion and now requests a finding that Defendant Sinclair waived attorney-client privilege when the invoices were produced and subsequently referenced within the presence of Sinclair, two attorneys, and a paralegal during the deposition without objection.

At first glance, it appears that much of this dispute may be moot. Some of the subject invoices relate to legal services provided in conjunction with Defendants' decision to close H&S Homes, L.L.C. and create Triangle Homes, L.L.C. and its subsidiaries. This Court's Order of

1

January 10, 2011 [Doc. 129] made clear that any documents, including billing records, related to these transactions were excluded from privilege and must be produced to Plaintiff. To this extent, Plaintiff's motion is rendered moot. Other invoices, however, may fall outside the scope of this Court's prior Order - specifically any legal invoices which may have been connected to the consent action of December 31, 2006. It is assumably those and any other invoices not falling within the scope of the Court's prior Order that Plaintiff now seeks to receive clear of privilege.

Georgia law controls in this instance. See In re Fink, 876 F.2d 84, 85 (11th Cir. 1989) ("[S]tate law governs the privileged nature of materials sought in discovery" in a diversity action.). Under Georgia law, attorney-client communications are absolutely privileged regardless of whether such communications are voluntarily, surreptitiously, or otherwise obtained by third parties. See McKie v. Ga., 165 Ga. 210, 210, 140 S.E. 625, 629 (1927). Accordingly, in Georgia, the attorney-client privilege is not lost or waived if an attorney should voluntarily or inadvertently produce privileged documents. Revera v. Ga., 477 S.E.2d 849, 851, 223 Ga. App. 450, 452 (1996). The attorney-client privilege can be waived only when there is an intentional and knowing disclosure of privileged materials by the client. Thus, privilege is not waived even if a client inadvertently produces privileged materials in discovery. There must be an *intentional* relinquishment of the privilege by the client for waiver to occur. Lazar v. Mauney, 192 F.R.D. 324, 330 (N.D. Ga. 2000) (citing Moclaire v. Ga., 451 S.E.2d 68, 72, 215 Ga. App. 360, 363 (1994) (no waiver without evidence that client authorized disclosure of communications)).

In the present case, there is no reason to believe that Defendant Sinclair knowingly and intentionally waived the attorney-client privilege by including eighteen legal invoices within the 5,000 pages produced. Throughout the life of this lawsuit, Defendants have vehemently opposed the production of documents which they believed to be protected by attorney-client privilege. In

this instance, Defendant Sinclair appeared for the deposition as the designee of H&S and never articulated any intent to waive privilege. Nor did Sinclair demonstrate any knowledge that privileged materials were produced. The production, as even Plaintiff concedes, was inadvertent.

As Defendant Sinclair now explains, nearly every topic identified for the H&S Homes deposition required the examination, evaluation, and production of voluminous records. Among many other things, Plaintiff requested that Defendant H&S identify all payments which may have benefitted another Horton entity. This task required several employees of Defendant H&S to spend more than a week compiling the information which amounted to approximately 2,000 pages, and the majority of the work related to responding to Plaintiff's discovery requests fell upon Defendant Sinclair. At the same time, Sinclair was also responsible for locating and producing documents for other Defendants in this case in preparation for their depositions.

On October 6, 2010, Sinclair appeared as the designee for Defendant H&S and brought three banker boxes of documents and checks totaling approximately 5,000 pages which were promptly turned over to Plaintiff's counsel in response to the notices of deposition. None of the other Defendants in this case reviewed the documents produced. Towards the end of the first day of the deposition, Sinclair informed Plaintiff that he needed additional time to more accurately answer questions about which payments "may have benefitted other Horton entities." The parties agreed to recess for the day and return on October 8, 2010. Shortly after the recess, counsel for H&S offered the exhibits to Plaintiff's counsel. Unknown to counsel for H&S, the production included eighteen checks or other evidence of payment to attorneys employed by Defendant H&S and the related invoices which revealed attorney-client communication via their time entry descriptions.

Plaintiff's counsel reviewed the production and discovered the invoices on October 7, 2010, but he made no effort to inform counsel for H&S of his discovery. The same day, one of

3

Defendants' attorneys met with Sinclair to examine selected checks and invoices that had been preliminarily identified as payments that may have benefitted other Horton entities. The meeting, which lasted approximately five (5) hours, consisted of reviewing approximately 50 individual checks and invoices. This process required Sinclair and his staff to search computer records and other data to try to determine whether such payments benefitted other Horton entities. Neither the checks to attorneys nor the 18 legal invoices at issue were subject to this review because none of the payments to the law firms were identified as being paid for the benefit of another Horton defendant.

On October 8, 2010, the H&S deposition resumed. Plaintiff's counsel asked Sinclair about a payment to the Chamberlain law firm in reference to one of the privileged invoices. Counsel's questions, however, did not delve into the substance of the invoices, and counsel never revealed that the documents produced contained privileged information. Counsel also chose not to show the invoices to Sinclair or his attorneys during the deposition. Thus, at that time, neither Sinclair nor his attorneys realized that supporting documents for each check had been produced. Only after the conclusion of the deposition did H&S's counsel realize that Sinclair inadvertently produced privileged material. Once the error was discovered, counsel for Defendants immediately contacted Plaintiff's counsel, admitted the error, and requested that the invoices be returned. Plaintiff's counsel resisted, claiming that privilege was waived by the production of the documents. According to Plaintiff's counsel, Sinclair and his attorneys should have known that the privileged invoices were contained within the 5,000 documents disclosed, and both had an opportunity to discover the error while reviewing the documents and during the deposition.

Clearly, "[m]istakes of this type are likely to occur in cases with voluminous discovery." United States v. Pepper's Steel & Alloys, Inc., 742 F. Supp. 641, 643-44 (S.D. Fla.1990). Generally, "these situations are resolved amicably, by counsel returning documents which are obviously

privileged and inadvertently produced." Id.  It is unfortunate that, in this case, the parties could not resolve the dispute themselves and that the Court is instead required to expend its valuable time and limited resources on this relatively minor matter.  Having, nonetheless, been forced to considered the matter, the Court finds that the privileged materials were inadvertently disclosed to Plaintiff's counsel, and there was no intent to waive attorney-client privilege with respect to the eighteen legal invoices.  Likewise, given the facts, the Court finds that neither Defendant Sinclair nor his attorneys should have known necessarily that a relatively few legal invoices were included in the production; the volume of materials was great, and the time for review was short.  See Edelen v. Campbell Soup Co., 265 F.R.D. 676, 698 (N.D. Ga. 2010).  Moreover, as discussed above, in Georgia, it is irrelevant whether the attorney's "should have known" that privileged materials were produced. Rather, Plaintiff must demonstrate that the client, H&S Homes, intended to relinquish privilege when Sinclair produced the invoices.  See Lazar, 192 F.R.D. at 330.  Plaintiff has not made this showing.

Plaintiff's counsel is accordingly **DIRECTED** to return the privileged materials as requested by Defendants.  To the extent the documents were protected by attorney-client privilege following this Court's Order of January 10, 2011, the privilege remains in tact.  Defendants have thirty (30) days to retrieve the documents submitted to the Court for consideration *in camera*.  If the documents are not retrieved within this period, they will be destroyed.

It is SO ORDERED this 22nd day of March, 2011.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

jlr

5