THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TERRY CARTRETTE TINDALL,   :
                                :
     Plaintiff,          :
v.                       :     Civil Action
                                :     No.   5:10-CV-044(CAR)
H & S HOMES, LLC, et. al.,    :
                                :
     Defendants.       :
_____

## ORDER ON THE TRUST DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Currently before the Court is the Motion for Summary Judgment [Doc. 171] filed by Defendants "The Maude Hicks Family Trust," "The N. Dudley Horton Revocable Trust," and "The Robert Dudley Horton Trust" (herein "the Trusts" or "Trust Defendants").  Through this Motion and the supporting briefs, the Trust Defendants attempt to show that Plaintiff's claims of conspiracy against the Trusts fail as a matter of law.  Plaintiff concedes that this is her only claim against the Trust Defendants, and the Court agrees that Plaintiff has failed to identify sufficient evidence of the Trusts' actual participation in or benefit from the alleged "conspiracy."  The Trust Defendants' Motion for Summary Judgment is accordingly **GRANTED**; all other associated motions are **DENIED**.

1

## STANDARD OF REVIEW

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

On a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323.  If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991); see Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324 26.  Summary judgment must be entered if the nonmoving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323.

## DISCUSSION

Through the present action, Plaintiff Terry Tindall is attempting to attack certain conveyances by H&S Homes, L.L.C. as fraudulent under Georgia law.   In so doing, Plaintiff also seeks to impose liability on three trusts: "The Maude Hicks Family Trust," "The N. Dudley Horton Revocable Trust," and "The Robert Dudley Horton Trust."   The Trusts are all apparently related to the Horton family in some way, and together, the Trusts hold 99% of the stock in Defendant Horton Industries.   Horton Industries is a holding company which owns 100% of Defendant Horton Homes; Horton Homes, in turn, owned 100% of H&S Homes, which is now insolvent.   Defendant Dudley Horton is the highest ranking officer in all of the Horton businesses; he serves as either the chairman of the board, president, or chief operating officer of each.   Dudley Horton is also the sole trustee of all three Trusts.   In his role as trustee, Dudley Horton controls nearly all the voting stock in Horton Industries, which he uses to choose its directors.

Prior to the alleged fraudulent conveyances by H&S, Dudley Horton was concerned with the effect of large judgments pending against H&S and the expected collection efforts by Plaintiff.   It was suggested that Dudley Horton could possibly protect his assets by shutting down H&S Homes and transferring H&S assets to other Horton entities – with the goal of protecting "the investment in [H&S's] sales lots." Horton Industries, under Dudley Horton's control, then created four new subsidiaries

which would subsequently perform much the same purpose of H&S Homes, at many of the same locations, with former H&S assets and employees.   Through various actions by the Horton Defendants – including Dudley Horton, Horton Homes, and H&S Homes – all of H&S's assets were eventually transferred to other Horton entities and many were used for the benefit of the new subsidiaries.

The Trusts, however, were not directly involved in making the decision to close H&S Homes or to transfer the property.   Though the trust certainly owned the majority of voting shares in Horton Industries, it is undisputed that the Trusts themselves were not directly involved with the day-to-day management and operation decisions of Horton Industries, Horton Homes, or H&S Homes.   The Trusts' involvement in these companies is apparently limited to their combined power as majority shareholder to vote for the board of directors of Horton Industries.   None of the Trusts ever served as a member of H&S Homes, loaned money to H&S Homes, owned any assets jointly with H&S homes, or incurred any debt with H&S Homes.   The Trusts also never engaged in any business transactions with H&S Homes, never purchased any assets from H&S Homes, and never received any assets from H&S Homes.

Plaintiff contends, however, that the Trusts may still be held liable for the alleged fraudulent transactions initiated or allowed by their sole trustee, Dudley Horton. Plaintiff specifically contends that, through the actions and decisions of Dudley Horton,

4

the Trusts "participated in the conspiracy to fraudulently avoid" H&S Homes' liability to Plaintiff by fraudulently transferring property belonging to H&S.

As a general rule, a trust will not be held liable for the torts of its trustee.   See Miller v. Tranakos, 209 Ga. App. 688, 689, 4344, S.E.2d 84, 86 (1993).   Thus, even if the Court assumes that Dudley Horton conspired to enter into fraudulent transactions, his conduct would not entitle Plaintiff to invade the Trusts simply because Dudley Horton was their sole trustee.   Under Georgia law, it cannot "be presumed that the beneficiaries or owners of the trust corpus knew of any wrongdoing through use of trust funds."   Id. Before a trust can be held liable, there must be some proof that the trust actually benefitted from or was complicit in the conspiracy alleged.   See id.

On the other hand, public policy certainly cannot allow a trustee to funnel ill-gotten gains into a trust and the trust to then evade repayment of the money as a so-called innocent beneficiary.   See id.   A trust may thus be required to satisfy a trustee's liability if it is proven that the trust "actually benefitted from the trustee's misdeeds or [if] some other equity, such as conspiratorial knowledge or unjust enrichment," authorizes an invasion into the trust.   Id.   Proof of a benefit received by the trust, however, must "be more than mere suspicion arising from circumstances . . . , and must point to specific culpability or, at least, a specifically proved unjust enrichment." Id.

5

In this case, Plaintiff argues that the Trusts may be implicated in the alleged conspiracy through evidence that Defendant Dudley Horton was the sole trustee of all three Trusts, that the Trusts held a majority ownership interest in Horton Industries, which in turn owned both Horton Homes and H&S, and that Dudley Horton used his power and authority over these Horton companies to make fraudulent transactions – which ultimately protected the Trusts' investment in Horton Industries.   In short, Plaintiff contends that if Dudley Horton is a conspirator, the Trusts are too.

There is no evidence, however, of any actual conspiratorial knowledge or participation by the Trusts.   Again, it is undisputed that the Trusts were not involved in the day-to-day operations of Horton Industries, Horton Homes, or H&S Homes.   The Trusts merely owned the controlling stock in Horton Industries, which allowed their trustee, Dudley Horton, to choose the board of directors.   Dudley Horton, on the other hand, was very involved in the daily operations of the Horton companies, independent of his role as a trustee.   Dudley Horton was the highest ranking officer of the Horton companies; he was the president of Horton Industries and the chairman of the board for H&S Homes.   Plaintiff has not identified any evidence suggesting that Dudley Horton was working in his capacity as "trustee," as opposed to his role as president or chairman of the board, when he allegedly conspired to make fraudulent transfers of H&S assets.

Plaintiff, in fact, does not dispute that Dudley Horton was only authorized as trustee to vote the shares owned by the Trusts to elect the directors of Horton Industries. This action has not been connected to any part of the conspiracy, and there is no evidence that Dudley Horton was otherwise vested with authority, in his capacity as trustee, to make any decisions regarding the management of Horton Industries, Horton Homes, or H&S Homes.   Moreover, from the evidence identified, it appears that the Trusts were no more than shareholders in Horton Industries, and Georgia has long recognized that shareholders are not personally liable for corporate acts unless the corporate veil has been successfully pierced.   EnduraCare Therapy Mgmt, Inc. v. Drake, 298 Ga. App. 809, 681 S.E.2d 168 (2009).   Plaintiff has not done that here.

The actual benefit received by the Trusts because of Horton's conduct is also somewhat unclear.   There is no evidence that the Trusts directly received any funds or assets because of the transfers.   Nor is there any evidence before the Court that the stock owned by the Trusts would have in fact decreased in value or that the Trusts' investment in Horton Industries would have otherwise been injured if H&S assets were sold to satisfy Plaintiff's judgment.   Plaintiff simply asks this Court and the jury to make the assumption that the Trusts did benefit financially from the alleged fraudulent transfers. Proof of the alleged benefit to the Trusts, however, must "be more than mere suspicion

arising from circumstances." <u>Miller</u>, 209 Ga. App. at 689.   Actual proof of the benefit or some other unjust enrichment is required.   <u>See</u> <u>id.</u>

Plaintiff has thus not identified sufficient evidence from which a jury might conclude that Dudley Horton was acting in his capacity as trustee of the Trusts when he participated in the alleged conspiracy; that the trust directly benefitted from the alleged conspiracy; or that the trust should be culpable for any other compelling reason.   The Trust Defendants' Motion for Summary Judgment [Doc. 171] is accordingly **GRANTED**.

Because the Court further finds that the issues raised in the present motions were sufficiently briefed by the parties, no further briefing or oral argument is required.   For this reason, Plaintiff's Motion to File a Sur-Reply [Doc. 246] and the parties' Motions for Oral Argument [Docs. 172 & 178] are also **DENIED**, in relevant part.

SO ORDERED this 20th day of January, 2012.

<u>S/   C. Ashley Royal</u>
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

jlr