THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TERRY CARTRETTE TINDALL,     :
                               :

      Plaintiff,              :
                               :

v.                             :      Civil Action
                               :      No.   5:10-CV-044(CAR)

H & S HOMES, LLC, et. al.,     :
                               :

      Defendants.          :
_____

## SECOND ORDER ON MOTION FOR RECONSIDERATION

Currently before the Court are the supplemental briefs filed in response to this Court's Order on Plaintiff's Motion for Reconsideration [Doc. 284]. In her Motion, Plaintiff contends that this Court erred in granting summary judgment on her civil conspiracy claims against Defendants "The Maude Hicks Family Trust," "The N. Dudley Horton Revocable Trust," and "The Robert Dudley Horton Trust" (herein "the Trusts" or "Trust Defendants"). While, in its Order, this Court found no merit in Plaintiff's allegations of error, the Court did nonetheless allow Plaintiff to file a supplemental brief on the issue of whether the Trust Defendants may be held liable for the alleged

1

conspiratorial acts of their sole trustee Defendant Dudley Horton.   Defendants were likewise given an opportunity to respond.

As explained in this Court's prior Orders, a trust will generally *not* be held liable for the torts of its trustee unless there is some proof that the trust "actually benefitted from *or* was complicit in the conspiracy alleged." <u>Miller v. Tranakos</u>, 209 Ga. App. 688, 689, 434 S.E.2d 84 (1993) (emphasis added); <u>see also</u>, <u>Burgess v. James</u>, 73 Ga. App. 857, 859, 38 S.E.2d 637 (1946) ("The general rule in Georgia is that [trust] funds will not be depleted by subjection to liability for the [acts] of a trustee.").   Thus, a trust may be required to satisfy a trustee's tort liability only if it is proven that the trust "actually benefitted from the trustee's misdeeds or [if] some other equity, such as conspiratorial knowledge or unjust enrichment," authorizes an invasion into the trust.    <u>Miller</u>, 209 Ga. App. at 689.   "The proof of the trust's benefit from or complicity in the wrongful acts must be more than mere suspicion arising from circumstances including commingling of funds or other coincidence, and must point to specific culpability *or*, at least, a specifically proved unjust enrichment." <u>Id.</u> (emphasis added).

Thus, in this case, Defendant Dudley Horton's conduct, even if conspiratorial, would not automatically implicate the Trusts in the allege conspiracy absent some evidence that the Trusts benefitted from or were complicit in the conspiracy alleged. <u>See</u> <u>id.</u>   As the Court previously explained, this may be accomplished through evidence

2

of either a specific benefit to the Trusts, a use of the Trusts in furtherance of the conspiracy, or conspiratorial knowledge or culpability of a Trust beneficiary.   See id.

In her Supplemental Brief, Plaintiff has now identified additional evidence in an attempt to create a jury question on the issue of the Trust Defendants' liability.   Plaintiff shows that Defendant Dudley Horton is the sole trustee and sole beneficiary of The N. Dudley Horton Revocable Trust and that Defendant Horton made multiple deposits and two key withdrawals from that Trust. (Pl.'s Supp. Brief at 2, 4-5, 10).   Defendant Horton, in fact, deposited more than $ 2,000,000.00 into The N. Dudley Horton Revocable Trust during the period from February of 2005 through November of 2009. (Id.).   The Trust then issued two checks back to Defendant Horton totaling $ 980,000.00 at or near the time of the mass auction and liquidation of the H&S assets – transactions which are now being challenged as fraudulent. (Id.).   The first check, written for $ 180,000.00, was issued on December 29, 2006 – just as H&S assets were beginning to be liquidated – and the second check, written for $ 800,000.00, is dated January 16, 2007 – just one day before the challenged sale occurred. (Id.).   Though there is no evidence showing how this money was then used by Defendant Horton, it is undisputed that nearly all of the H&S assets were re-purchased at the auction by other Horton-operated companies.

Plaintiff additionally alleges that Defendant Horton, as trustee, had the "ultimate right and power to control Horton Industries and its subsidiaries" and that the Trusts

3

would be "unjustly enriched if they are allowed to retain value in their stock assets which should be available to the payment of Plaintiff's judgment."(<u>Id.</u> at 10). According to Plaintiff, the "benefit of not paying [her] judgment flowed to the bottom line of Horton Industries through its consolidated tax return and therefore to its major shareholders, the Trusts." (<u>Id.</u> at 6).

The evidence cited by Plaintiff would, therefore, appear to demonstrate possible conspiratorial knowledge of a Trust beneficiary, use of one of the Trusts in furtherance of the conspiracy, and evidence of a benefit to the Trusts.   However, according to the Trust Defendants, Plaintiff's only correct allegations are that Defendant Dudley Horton was both the sole trustee and sole beneficiary of The N. Dudley Horton Revocable Trust and that he made various deposits into and two personal withdrawals from that Trust.

Defendants attempt to dispel any suspicion about the purpose of the withdrawals from The N. Dudley Horton Revocable Trust at or near the time of the auction by claiming that the transfers were entirely unrelated to the transactions challenged in this case.   In support of this contention, Dudley Horton provides a somewhat vague declaration that those funds were merely "repayments" of loans he had made to the Trust N.D. Horton Jr. Trust, i.e., his various deposits into the Trust account between February 2005 and January 2007. (Supplemt'l Decl. of Dudley Horton [Doc. 309] at 13).

4

Defendants also counter Plaintiff's assumption that the Trusts benefitted financially from the dismantling of H&S Homes by explaining that there was no actual tax benefit to the Trusts resulting from tax losses caused by liquidation of H&S Homes and that the Trusts never received any dividends from Horton Industries.  Thus, it appears that Plaintiff's only evidence that the Trusts "actually benefitted" from Horton's alleged misdeeds arises from the premise that a shareholder generally benefits from the financial windfalls of the corporation.

This evidence of benefit, standing alone, is not sufficient to establish liability on either The Maude Hicks Family Trust or The Robert Dudley Horton Trust.  Even if Dudley Horton's alleged acts allowed Defendants to avoid payment of over $2,000,000.00 in punitive damage judgments, Plaintiff only generally links this savings to these trusts, as shareholders of Horton Industries.  Thus, in the absence of any other evidence of a benefit to or culpability on the part of The Maude Hicks Family Trust or The Robert Dudley Horton Trust, Plaintiff has failed to create a triable issue as to their liability.   For this reason, the Court will not reconsider its grant of summary judgment in favor of The Maude Hicks Family Trust and The Robert Dudley Horton Trust. Dudley Horton is not a beneficiary of those trusts, there is no evidence that those trusts were complicit in the conspiracy, and there is insufficient evidence that those trusts actually benefitted financially from the alleged fraudulent transactions.

5

The Court, however, will reconsider is grant of summary judgment in favor of The N. Dudley Horton Revocable Trust, for now, as Plaintiff has identified some evidence of conspiratorial knowledge or other culpability of the Trust's beneficiary. Again, Defendant Dudley Horton is both the sole trustee and sole beneficiary of The N. Dudley Horton Revocable Trust.   Therefore, he not only controls Horton Industries but he also controls and benefits from The N. Dudley Horton Revocable Trust, which in turn owns nearly half of all the shares of Horton Industries.   The financial interests of Dudley Horton, Horton Industries, and The N. Dudley Horton Revocable Trust are thus intertwined to some extent.   This, combined with the fact Dudley Horton's alleged acts may have allowed Defendants to avoid payment of over $ 2,000,000.00 in punitive damage judgments, may support a jury finding in Plaintiff's favor.

As Plaintiff has repeatedly pointed out, these facts distinguish the present case from those circumstances considered in Miller where the trust beneficiaries were *not* apprised of the trustee's investment dealings and were also considered victims of the trustees' misdeeds.   See 209 Ga. App. at 689.   It would be safe to say that neither The N. Dudley Horton Revocable Trust nor Dudley Horton would be considered victims in this case.   A jury could find that both derived some benefit from the alleged conspiracy, and unlike the trustee in Miller, Dudley Horton was clearly authorized to act on the behalf of the Trust in his dealings with Horton Industries. See id.

6

The Court *also* finds the temporal proximity of Dudley Horton's large withdrawals from the Trust to be some evidence of conspiratorial knowledge or other culpability of the Trust.   Though Defendant Horton avers that these checks were merely "partial repayments" of "loans" he previously made to the Trust (and thus unrelated to the large financial transactions occurring at or near that time), a jury may not be so easily convinced.   Defendants did not offer a copy of the $180,000.00 check into evidence, and the copy of the check for $800,000.00, which was submitted, does not include any notation indicating that it was a payment intended to discharge a legal obligation. Defendant Horton likewise fails to provide any specificity as to the details of the loan payments or as to which loan the payments were applied, and there are no other financial records in evidence documenting any loan repayment.   Furthermore, it appears from the evidence submitted that, if these checks were loan repayments, they were the only such payments ever made during the almost five-year period from February 2005 to November 2009.   The evidence does not show any similar withdrawals for nearly two years before or after these checks were written to Dudley Horton from the Trust account.   A jury could thus potentially find that it was more than mere coincidence that these loan payments were made only at the time of the alleged fraudulent assets purchases by Defendant Horton's companies.

7

Therefore, when construing all facts in Plaintiff's favor and in absence of corroborating evidence supporting Defendant Horton's declaration, the Court will consider this matter to be a question for the jury.   See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (on summary judgment courts are required to construe facts and all reasonable inferences in light most favorable to the nonmoving party); see also, Carter v. Univ. of S. Ala. Children's & Women's Hosp., 510 F. Supp.2d 596 n 15 (S.D. Ala. 2007) (self-serving denial of wrongdoing need not be credited if plaintiff's facts support a reasonable inference to the contrary).   Inasmuch, this issue may simply turn on the veracity of Defendant Dudley Horton as witness, which is of course a matter wholly within the province of the jury. Lane v. Celotex Corp., 782 F.2d 1526, 1528 (11th Cir. 1986).

Thus, while Plaintiff's evidence does not undisputedly establish that The N. Dudley Horton Revocable Trust "actually benefitted from or was complicit in the conspiracy alleged," the Court finds that Plaintiff's evidence may be sufficient to create a jury question on the issue.   In other words, the Court will wait and see what the evidence shows at trial.   The grant of summary judgment in favor of The N. Dudley Horton Revocable Trust is accordingly **VACATED**, and the Trust Defendants' Motion for Summary Judgment is now **DENIED in part.**   However, the Court may choose to

revisit this matter, if the Trust moves for judgment as a matter of law pursuant to Fed. R.

Civ. P. 50 at the close of Plaintiff's evidence.

SO ORDERED this 14th day of May 2012

S/   C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

jlr

9